Charles SCHOENECKE and Ruth Schoenecke, husband and wife, Appellees,

v.

David T. YOST and Anna M. Yost, husband and wife; Randolph B. Ball and Deborah K. Ball, husband and wife; Randy J. Lucas and Pamela D. Lucas, husband and wife; Keith Melton Barnes and Donna M. Barnes, husband and wife, Appellants.

No. 65344.

Supreme Court of Oklahoma.

March 7, 1989.

As Amended on Grant of Rehearing for Limited Purpose July 11, 1989.

James & Gilmore by Richard James, Stroud, for appellees.

Kelley & Kelley by James P. Kelley, Oklahoma City, Vassar and Vassar by Paul M. Vassar, Chandler, for appellants.

HODGES, Justice.

Appellees filed a petition to quiet title to the east half of the southeast quarter of

Section 27–12N–2E, Lincoln County, Oklahoma. In addition, appellees sought to quiet title in themselves to a 33 foot strip of land lying east of an existing fence and directly west of the north/south section line between sections 27 and 26 as located in a survey presented by appellees at trial. The appellants alleged ownership of property located in the southwest quarter of section 26 and requested that title to their interest in the SW/4 of section 26 be quieted in them. The survey they presented showed the location of the north/south section line to be west of the north/south section line location supported by the appellees' evidence. The issue presented to the trial court was to determine the location of the true section line.

The trial court found the location of the true section line to be that section line described in the appellees' survey of the southeast quarter of section 27.

### I.

The appellants argue that the survey presented by the appellees was not conducted according to federal law and, therefore, the trial court erred by relying on this survey for the purpose of designating the location of the section line separating the parties' property. We agree.

In 1969 a survey (relied upon by the appellees at trial) covering only the southeast quarter of section 27 was prepared by a surveyor (Rodgers) who relied primarily on notes made by prior county surveyors to determine the location of three of the four corners of the southeast quarter. The northwest corner of the southeast quarter had no marker and had to be reestablished. In reestablishing this corner Rodgers relied on the junction of four fence lines erected by the various quarter section owners as being "good physical evidence of where the center of the section [was] acknowledged."

In 1983 the appellants had a survey prepared of both sections 26 and 27. This surveyor (Cone) located all four corners of both sections by checking the original government survey for the corner locations and then searching for the corner markers which he found in place. From these corner markers he was able to determine the boundary length of the exterior lines and locate the interior lines of the sections by mathematic analysis.

Title 43 U.S.C. sections 751–753 sets out the Rules of Survey of Public Lands used by the United States Geological Survey conducted in Oklahoma in 1870 and 1871. Section 752 in particular defines how the interior lines of sections are to be ascertained. This section reads in part as follows:

> First. All the corners marked in the surveys, returned by the Secretary of the Interior or such agency as he may designate, shall be established as the proper corners of sections, or subdivisions of sections, which they were intended to designate; and the corners of half and quarter sections, not marked on the surveys, shall be placed as nearly as possible equidistant from two corners which stand on the same line.

■ .While the appellees argue that the above language only served to direct the actions of the original government surveyors and, thus, has no application to this situation, the United States Supreme Court has held that these original government surveys as approved by the General Land Office of the United States government are "unassailable by the courts, except by a direct proceeding." *Cragin v. Powell*, 128 U.S. 691, 9 S.Ct. 203, 32 L.Ed. 566 (1888); *Whitaker v. McBride*, 197 U.S. 510, 25 S.Ct. 530, 49 L.Ed. 857 (1905). Further, the last accepted government survey, prior to the issuance of a patent, will prevail over subsequent surveys. *Larson v. Larson*, 89 Cal.App.2d 846, 202 P.2d 121 (1949). This rule holds true even if a subsequent determination is made that the accepted original survey is incorrect. *United States v. Reimann*, 504 F.2d 135 (10th Cir.1974).

■ Appellees point out that in 1969 Rodgers was correct in relying on prior

county surveys while preparing his survey of the SE/4 of section 27. This reliance was based on 19 O.S. § 572 (since repealed in 1982) which refers to surveys conducted by the county surveyor as being "presumptively correct." However, 19 O.S. § 574 (also repealed in 1982) specifically sets forth the requirement that "re-survey and subdivision of lands by all county surveyors shall be according to the laws of the United States, and the instructions issued by the officers thereof in charge of the public land surveys, in all respects." This statute recognizes the necessity of conforming later surveys to the original government surveys whenever possible. No testimony was presented at trial to demonstrate the method used in conducting the prior county surveys nor was there any evidence received to show that these surveys retraced the original government survey of section 27. In contrast, the Cone survey was prepared in accordance with the method described in Title 43 U.S.C. §§ 751–753.

An extremely similar fact situation is found in the case of *Vaught v. McClymond*, 116 Mont. 542, 155 P.2d 612 (1945) where a dispute involving a boundary line and the placement of a fence between the parties' properties was declared resolved by the court when it determined the true location of the boundary line as *"created and established by the official United States survey."* This case was concerned with the survey procedure because the surveyor had relied on an earlier private survey and portions of an earlier county survey. In remanding the case so that another survey could be conducted, the court said:

> It affirmatively appears that the private surveys upon which both plaintiff and cross-complainant rely were not made in accordance with the official plat, field notes, monuments of survey, lines, descriptions and landmarks made and established by the official government survey of the two quarter sections. For such reasons these surveys cannot and they do not furnish evidence of the location of the true boundary line between the northwest quarter and the southwest quarter of Section 26 "according to the United States government survey thereof." The government survey conclusively fixes and controls the limits and boundaries of the two quarter sections involved and such limits, boundaries and corners, so established, may not be changed by the A.B. Cooley survey of 1911, by the W.P. Burke surveys of 1941, or by any other subsequent surveys. *Vaught*, 155 P.2d at 619.

The Rodgers' survey presented in this case relied on prior county surveys for the location of the section line. The Cone survey, however, located the original corner markers of both sections 26 and 27 and then proceeded to locate the interior boundaries in the manner prescribed in 43 U.S.C. §§ 751–753. This method, approved by Congress, is the only method by which surveys may be conducted in order to conform to the federal statutes. *Vaught*, 155 P.2d at 616. The Cone survey is the only survey presented at trial that was conducted in accordance with federal law and, as such, should be adopted as marking the true section line between the parties' properties.

## II.

The appellees contend that acquiescence between the parties' predecessors in title supports the trial judge's ruling that the Rodgers survey indicates the location of the true section line. We find this contention to be in direct conflict with the trial judge's finding in the Journal Entry of Judgment entered in this case which reads, in pertinent part, as follows:

> 6. That none of the parties has established ownership due to adverse possession or acquiescence.

▇ The facts presented at trial do not support the appellees' claim of ownership by acquiescence. The testimony at trial showed that on one occasion the appellees cut some trees and planted some flowers

on the thirty-three foot strip of land lying east of the existing fence. At all other times, the appellants' predecessors in title grazed cattle on the contested land, cut the grass up to the fence line and generally cared for all of the property lying east of the fence and west of the alleged section line. Based upon these facts we do not find the ruling of the trial court as to the issue of acquiescence to be against the weight of the evidence. Our judgment reversing the trial court on the location of the true section line stands.

THE DECISION OF THE TRIAL COURT IS REVERSED.

All the Justices concur.